UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE MONTELONGO, et al., | No. 1:15-cv-01605-TLN-BAM |
| Plaintiffs, | |
| v. | **ORDER** |
| CITY OF MODESTO, et al., | |
| Defendants. | |

This matter is before the Court on Defendants City of Modesto ("City") and Officer Dave Wallace's (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 86.) Plaintiffs Jesse Montelongo, Victoria Montelongo, Theresa Lozano, J.M., E.M., Ale. M., Ali. M., Ala. M. (collectively, "Plaintiffs") filed an opposition. (ECF No. 89.) Defendants filed a reply. (ECF No. 94.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion.

///
///
///
///
///
///

1

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Close to midnight on October 16, 2014, Teresa Lozano called 911 from her home at 528 Milo Road in Modesto, California.  (ECF No. 90 at 2.)  Ms. Lozano told the 911 dispatcher: "I need help please — hurry! . . . Help me!  Just hurry.  Please help me . . . My son is gonna beat — ," after which point the phone line cut off.  (*Id.*)  The 911 call was dispatched to the Modesto Police Department, with the 911 dispatcher stating over the radio: "Start security check 528 Milo across from Lucerne.  The female on the phone, she called multiple times yelling help me over and over, disconnected, called back again, disconnected, all we could understand was my son has a . . . [a]nd so we don't know what he has."  (*Id.* at 2–3.)

Officers Dave Wallace and Michael Callahan responded to the call.  (*Id.* at 3.)  Officer Callahan's body camera footage shows that the officers encountered Victoria Montelongo and her fiancé in the driveway of 528 Milo Road.  (Callahan Video at 01:00–01:50.)  Ms. Montelongo told the officers that her brother, Jesse Montelongo, was drunk and threatening their mother inside the home.  (*Id.*)  After speaking to Ms. Montelongo in the driveway, the officers approached the home.  (*Id.*)

Officer Wallace's body camera footage shows that Officer Callahan rang the doorbell and then walked toward the opposite side of the home as a woman cried for help from inside. (Wallace Video at 00:21–00:36.)  Officer Wallace approached the front of the house as Mr. Montelongo opened the front door.  (*Id.* at 00:43–00:46.)  Mr. Montelongo stood six to ten feet away with his right arm concealed behind his back.  (*Id.*; *see also* ECF No. 90 at 3–4.)  Officer Wallace pointed his firearm at Mr. Montelongo and stated, "Show me your hands."  (Wallace Video at 00:46.)  Mr. Montelongo responded, "What?" and kept his right hand behind his back as he stood in the doorway.  (*Id.* at 00:47.)  Officer Wallace loudly repeated, "Show me your hands." (*Id.* at 00:48.)  As Officer Wallace repeated the second command, Mr. Montelongo threw an object from his previously concealed right hand in Officer Wallace's direction.  (*Id.*)  The throw was underhanded, and Mr. Montelongo remained in the doorway as he threw the object.  (*Id.*) Officer Wallace reacted by quickly turning to the left.  (*Id.* at 00:48.)  When he straightened, Officer Wallace fired his weapon at Mr. Montelongo, who had already backed into the house and

2

was shutting the front door when the shot was fired.  (*Id.* at 00:49.)  When Officer Callahan returned to the front of the house after the gunshot, Officer Wallace told him, "He threw something at me" and "He wouldn't show me his hands and threw an object at me." (*Id.* at 1:01-1:06.)  The officers then cleared the house and detained Defendant until medical workers arrived.  (*Id.* at 01:30–07:40.)  Mr. Montelongo suffered a gunshot wound below the chest, but survived his injuries.  (ECF No. 91-4 at 13.)  It was later determined that the object Mr. Montelongo threw at Officer Wallace was a book.  (ECF No. 91-1 at 49.)

Plaintiffs brought this action on October 20, 2015, asserting various 42 U.S.C. § 1983 ("§ 1983") claims and state tort claims related to the incident.  (ECF No. 1.)  Defendants filed the instant motion for summary judgment on August 2, 2019.  (ECF No. 86.)

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of a factual

dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that a dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

///

**III.     ANALYSIS**

      A.     § 1983 Claims

Section 1983 provides that "[e]very person who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]" 42 U.S.C. § 1983.

Plaintiffs assert four distinct § 1983 claims: excessive force in violation of the Fourth Amendment (Claim One); unlawful detention in violation of the Fourth Amendment (Claims Two and Three); and violation of the Fourteenth Amendment's Equal Protection Clause (Claim Four). (ECF No. 1 at 6–8.) Defendants move for summary judgment as to all of Plaintiffs' § 1983 claims. (ECF No. 86 at 2.) In opposition, Plaintiffs only rebut Defendants' argument regarding the excessive force claim. (*See generally* ECF No. 89.) However, the Court may not grant a motion for summary judgment "on the mere fact" that Plaintiffs fail to challenge what is asserted by the moving party. *See Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 3d 1123, 1135–36 (E.D. Cal. 2017). Therefore, the Court will address all of Plaintiffs' § 1983 claims in turn.

      *i.     Excessive Force (Claim One)*

          *a.     Constitutional Violation*

Defendants argue the Court should grant summary judgment as to Mr. Montelongo's excessive force claim because Office Wallace's use of force was objectively reasonable as a matter of law. (ECF No. 86 at 16.) In opposition, Plaintiffs argue there are genuine issues of material fact as to whether Officer Wallace used excessive force. (ECF No. 89 at 17.)

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment permits officers making an arrest to use force, but only an amount that is objectively reasonable in light of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The parties agree Officer Wallace used deadly force. (*See* ECF No. 86 at 16; *see also* ECF No. 89 at 6.) "The intrusiveness of a seizure by means of deadly force is unmatched." *Garner*, 471 U.S. at 9. However, "whether or not [Officer Wallace's] actions constituted

5

application of 'deadly force,' all that matters is whether [his] actions were reasonable." *Scott v. Harris*, 550 U.S. 372, 383 (2007).  The inquiry is objective.  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011).  The vantage point is that of a reasonable officer confronted with the same facts, bearing in mind the decisions occurred in a "split" second and making every effort to ignore the advantages of "20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97.

In determining whether Officer Wallace's actions were objectively reasonable, the Court "must balance the nature of the intrusion upon an individual's rights against the countervailing government interests at stake, without regard for the officers' underlying intent or motivations." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), *cert. denied sub nom. Browder v. Nehad*, 141 S. Ct. 235 (2020) (citing *Graham*, 490 U.S. at 396–97).  "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue." *Id.* "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *Id.* (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

Reasonableness of force is usually a fact question for the jury.  *A.G.1 by & through Uribe v. City of Fresno*, No. 1:16-CV-01914-LJO-SAB, 2018 WL 4042906, at *4 (E.D. Cal. Aug. 22, 2018) (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* (quoting *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012)).

In the instant case, Defendants argue Officer Wallace's actions were objectively reasonable based on the following evidence: the officers were responding to a suspected domestic violence call; the 911 caller left open whether the suspect was armed; when the officers arrived at the scene, Ms. Montelongo told the officers her brother was drunk inside the home and had been threatening and aggressive with her mother; Officer Wallace recognized Ms. Montelongo's fiancé

6

1   as being associated with the Norteños gang, raising suspicion that Mr. Montelongo might be in a
2   gang as well; the officers heard a woman cry for help from inside the home; when Mr.
3   Montelongo appeared at the front door, he concealed his right hand despite Officer Wallace's
4   commands; Officer Wallace believed the concealed object could be gun or knife; Officer Wallace
5   fired his weapon after Mr. Montelongo "lunged" at him from close range with the unknown
6   object in his hand.  (ECF No. 86 at 16–17.)

7   Defendants also argue it is irrelevant that Officer Wallace fired his weapon as Mr.
8   Montelongo was moving back into the house.  (ECF No. 86 at 19.)  Defendants emphasize that
9   only 1.5 seconds elapsed between the time Mr. Montelongo threw the object and Officer Wallace
10  fired his weapon.  (*Id.*)  Defendants submit a report from Kris Mohandie, Ph.D, a California
11  licensed psychologist trained in clinical, police, and forensic psychology.  (ECF No. 86-4 at 4.)
12  Dr. Mohandie opines that "Officer Wallace's decision to shoot had already been made prior to the
13  book being thrown at him" and "whether Officer Wallace still perceived a threat or not at that
14  point when the object was first thrown, given what is known about lag time, he would not have
15  been able to inhibit the shooting decision which had already been made, given the
16  psychophysiological dynamics of reaction time."  (*Id.* at 8.)  Defendants also submit a report from
17  Scott R. Seaman, a law enforcement consultant.  (ECF No. 86-5 at 2.)  Mr. Seaman opines that
18  Officer Wallace acted in a manner consistent with policy, procedures, and law enforcement
19  training.  (*Id.* at 27–31.)  Based on this evidence, Defendants argue Officer Wallace reasonably
20  believed Mr. Montelongo was an immediate threat and used reasonable force to protect himself
21  from that perceived threat.  (ECF No. 86 at 16–20.)

22  The Court agrees with Defendants that the conduct in the instant case is conduct that *may*
23  justify the use of deadly force.  *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("If the
24  person is armed — or reasonably suspected of being armed — a furtive movement, harrowing
25  gesture, or serious verbal threat might create an immediate threat.").  "The question on summary
26  judgment, however, is not whether some version of the facts supports [Defendants'] position, but
27  rather whether a trier of fact, viewing the evidence in the light most favorable to [Plaintiffs],
28  *could* find in [Plaintiffs'] favor."  *S.R. Nehad*, 929 F.3d at 1133 (emphasis added).  For the

1 reasons set forth below, the Court finds a reasonable jury *could* conclude that Mr. Montelongo did
2 not pose an immediate threat that warranted the use of deadly force.  *See Gonzalez v. City of*
3 *Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) ("The key issue in this case is whether a reasonable
4 jury would necessarily find that [the officer] perceived an immediate threat of death or serious
5 physical injury at the time he shot [the suspect] in the head."); *see also Vos v. City of Newport*
6 *Beach*, 892 F.3d 1024, 1032 (9th Cir. 2018) (concluding "a reasonable jury could conclude that
7 [the suspect] was not an immediate threat to the officers" when the officers outnumbered the
8 suspect eight to one, did not believe the suspect had a gun, and had less lethal methods available
9 to stop the suspect from charging).

10 First, the body camera footage arguably contradicts Defendants' repeated assertion that
11 Mr. Montelongo "lunged" at Officer Wallace.  (*See, e.g.*, ECF No. 86 at 13); *see Vos*, 892 F.3d at
12 1028 ("[V]ideo footage of the incident does not foreclose a genuine factual dispute as to the
13 reasonable inferences that can be drawn from that footage.").  It is undisputed that Mr.
14 Montelongo was six to ten feet away from Officer Wallace when he appeared in the doorway.
15 (ECF No. 90 at 4.)  The footage shows that Mr. Montelongo remained in the doorway with his
16 feet unmoving as he threw the object — underhanded — at Officer Wallace.  (Wallace Video at
17 00:48.)  A trier of fact could determine that Mr. Montelongo's underhanded toss did not pose a
18 serious physical threat to Officer Wallace.

19 Second, there is at least a reasonable inference that Officer Wallace had no reason to
20 believe Mr. Montelongo was armed.  Officer Wallace states he believed the object behind Mr.
21 Montelongo's back "was a gun or some other type of weapon."  (ECF No. 86-3 at 6.)  In the
22 footage, however, Officer Wallace never verbalizes such a belief.  Rather, he states Mr.
23 Montelongo threw "something" or an "object" at him.  (Wallace Video at 01:01–01:06.)
24 Moreover, Ms. Montelongo testified that she informed Officer Wallace prior to the incident that
25 there were no weapons in the house.  (V. Montelongo Dep. at 92 (filed under seal).)  She also told
26 officers Mr. Montelongo was drunk and being loud and threatening, but "not *that* kind of
27 threatening."  (Callahan Video at 01:20–01:40 (emphasis added).)  Ms. Montelongo's statements
28 suggest the officers were on notice that Mr. Montelongo did not pose a serious physical threat.

8

Third, Officer Wallace fired his weapon *after* dodging the object. (Wallace Video at 00:48–00:49.) A reasonable jury could conclude any threat related to the concealed object dissipated the moment the object passed by Officer Wallace. Defendants have not alleged that there was any reason to believe Mr. Montelongo possessed any other potentially dangerous objects on his person.

Lastly, the body camera footage clearly shows Mr. Montelongo was retreating into the home and closing the front door when the shot was fired. (*Id.* at 00:49.) A reasonable jury could conclude that a reasonable officer in Officer Wallace's position would have perceived he was no longer under attack. Further, a reasonable jury may also "consider the availability of other methods to subdue" Mr. Montelongo other than shooting him in the chest. *See Gonzalez*, 747 F.3d at 797 (explaining that an officer who shot a suspect could have shot the suspect in a nonlethal area of the body). For all these reasons, a reasonable jury could find that it was apparent Mr. Montelongo was no longer a threat when Officer Wallace fired his weapon, at least not a threat that warranted the use of deadly force.

Defendants primarily rely on three cases from within the Ninth Circuit. (ECF No. 86 at 17–19 (citing *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014); *F.C. by & through Corrales v. Impastato (F.C.)*, No. CV-11-00287-PHX-ROS, 2013 WL 12202371 (D. Ariz. Mar. 12, 2013); *Smith v. Cnty. of Riverside*, No. ED-CV-1600227-JGB-KKX, 2018 WL 5880610 (C.D. Cal. June 15, 2018).) Defendants' case law does not persuade the Court that Officer Wallace's actions were objectively reasonable as a matter of law.

In *Cruz*, officers received a tip from an informant that Cruz was "a gang member who sold methamphetamine and carried a gun." 765 F.3d at 1077. When a group of officers attempted to detain Cruz during a traffic stop, Cruz backed his vehicle into a marked police car to escape. *Id.* at 1078. Once officers eventually stopped Cruz's vehicle, four officers testified Cruz ignored commands and reached for the waistband of his pants. *Id.* The officers opened fire. *Id.* The district court granted summary judgment to the officers, finding that the officers' use of deadly force was reasonable. *Id.* On appeal, the Ninth Circuit reversed, finding there was a genuine factual dispute as to whether the officers saw Cruz reach for his waistband such that he still posed

1   an immediate threat when the officers shot him. *Id.* at 1079–1080.

2   In *F.C.*, a district court granted summary judgment to an officer where the plaintiff was
3   caught selling drugs and then "simulated taking a gun out of his pocket, charged the [officer's]
4   van with arms outstretched pointing his hands in the shape of a gun, and tried to make [the
5   officer] fear he was about to be shot." 2013 WL 12202371, at *3. The plaintiff "got to within 12
6   to 18 inches" of the officer. *Id.* The court found "[u]nder these tense, uncertain, and rapidly
7   evolving circumstances, [the officer's] split-second judgment was objectively reasonable." *Id.* at
8   *4 (internal quotation marks omitted).

9   In *Smith*, a district court granted summary judgment in favor of officers who shot an
10  individual who, "armed with *something*, lunged at [an officer] who was three or four feet from
11  him." 2018 WL 5880610, at *6 (emphasis in original). The court emphasized that the officers
12  reasonably believed the suspect had a knife or metal tool, the officers first attempted to use non-
13  lethal force with a taser, there was a risk of harm to close-proximity bystanders, and the suspect
14  had a "known recent history [of] armed assault." *Id.* However, the court denied summary
15  judgment as to "the eighth and final shot fired." *Id.* at *7. The court emphasized that the officers
16  failed to allege the suspect "still held a weapon once he stood up after being shot seven times,"
17  the suspect did not appear to make any threatening move toward the officers, and the suspect was
18  backing away from the officers when the eighth shot was fired. *Id.*

19  Although Mr. Montelongo did not comply with Officer Wallace's two commands to show
20  his hands and threw a concealed object toward Officer Wallace, Mr. Montelongo did not display
21  the same degree of "dangerous and erratic" behavior as the plaintiffs in *Cruz*, *F.C.*, or *Smith*. *See,*
22  *e.g.*, *Cruz*, 765 F.3d at 1077–1078. In *Cruz*, for example, the officers had been told by an
23  informant that Cruz was a gang member who carried a gun, and Cruz backed into a patrol car to
24  evade police and emerged from the car when he was finally stopped. *Id.* Yet the Ninth Circuit
25  held even that was not enough to grant summary judgment unless the officers saw Cruz reach for
26  his waistband before firing their weapons. *Id.* at 1080.

27  In the instant case, looking at the evidence in the light most favorable to Plaintiffs and
28  drawing all reasonable inferences in their favor, it appears Mr. Montelongo tossed an object at

1  Officer Wallace from six to ten feet away, Officer Wallace dodged the object, and then Officer
2  Wallace fired his weapon despite seeing Mr. Montelongo immediately retreat. As such, this case
3  is similar to the eighth shot in *Smith*. *See* 2018 WL 5880610, at *7. A reasonable jury could find
4  the threat to Officer Wallace had subsided by the time he fired his weapon. Although Defendants
5  provide evidence that Office Wallace's delay was due to a normal lag in reaction time (*see*
6  *generally* ECF Nos. 86-4, 86-5), Plaintiffs provide conflicting evidence from Scott DeFoe, a
7  police practices expert, who concluded that a reasonable officer in Officer Wallace's position
8  would not have used deadly force. (ECF No. 91-14); *see Vos*, 892 F.3d at 1032 n.7 ("[T]he mere
9  seconds that elapsed . . . is one factor in the analysis. While the calculus of reasonableness must
10 embody the allowance for the fact that police officers are often forced to make split-second
11 judgments, the analysis requires the court to look at all the facts and circumstances surrounding
12 the interaction.") (internal quotation marks omitted). A jury should resolve these factual issues.
13 *See Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (explaining "we must respect the
14 exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary
15 conflicts, and draw reasonable inferences from proven facts") (internal quotation marks and
16 brackets omitted).

17 Based on the existing record, the Court "cannot say that a verdict in favor of [Defendants]
18 on the claim for excessive force is the only conclusion that a reasonable jury could reach." *See*
19 *Gonzalez*, 747 F.3d at 797. For these reasons, summary judgment is not appropriate on the issue
20 of whether there was a constitutional violation.

21                    *b.   Qualified Immunity*

22 Qualified immunity shields officials from civil liability where a reasonable officer would
23 not have known that his conduct violated a clearly established right. *Anderson v. Creighton*, 483
24 U.S. 635, 638–39 (1987). It "gives ample room for mistaken judgments by protecting all but the
25 plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224,
26 229 (1991). An officer may be denied qualified immunity at summary judgment in a § 1983 suit
27 only if (1) the facts alleged, viewed most favorably to plaintiff, show the officer used excessive
28 force in violation of the Fourth Amendment, and (2) the right was clearly established so a

11

1 reasonable officer would have known his conduct to be unlawful. *Morales v. Fry*, 873 F.3d 817,
2 821 (9th Cir. 2017). "[T]he two prongs of qualified immunity balance two important, competing
3 interests: the need to hold public officials accountable for irresponsible actions, and the need to
4 shield them from liability when they make reasonable mistakes." *Id*. at 822.

5     As of the date of this incident in 2014, case law "clearly established that an officer may
6 not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the
7 officer or others." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Further, "it would be
8 clear to a reasonable officer that his conduct was unlawful." *Longoria v. Pinal Cnty.*, 873 F.3d
9 699, 709–10 (9th Cir. 2017) (denying qualified immunity at summary judgment where fact and
10 credibility issues were to be decided by a jury in a case in which an unarmed suspect was shot
11 after a chase). Determining whether a law was clearly established does not "require a case
12 directly on point, but existing precedent must have placed the statutory or constitutional question
13 beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011). At the time of
14 the shooting, it was clearly established that officers may not use deadly force against a person
15 who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or
16 threatening actions. *See George*, 736 F.3d at 838; *Curnow By and Through Curnow v. Ridgecrest
17 Police*, 952 F.2d 321, 324–25 (9th Cir. 1991); *see also Estate of Lopez by and through Lopez v.
18 Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017) (holding that *George* and *Curnow* clearly
19 established this principle at the time of the shooting in that case, October 22, 2013). This is true
20 even in circumstances in which the suspect has allegedly "committed a violent crime in the
21 immediate past." *See Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997); *Smith*, 2018
22 WL 5880610, at *9 ("Decedent may have initially attacked the Responding Officers, but if
23 Decedent no longer posed a threat, the use of deadly force violated clearly established law.").

24     Officer Wallace is not entitled to summary judgment based on qualified immunity
25 because, as established previously, there is a material issue of fact as to whether Officer Wallace
26 violated Mr. Montelongo's clearly established constitutional right. *Longoria*, 873 F.3d at 711;
27 *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming denial of summary
28 judgment on qualified immunity because "there are genuine issues of fact regarding whether the

officers violated [the plaintiff's] Fourth Amendment rights[, which] are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions"); *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002) (stating it was premature to decide qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"). Accordingly, Officer Wallace is not entitled to qualified immunity at this stage.

In sum, the Court DENIES Defendants' motion for summary judgment as to Mr. Montelongo's excessive force claim.

The Complaint also alleges Defendants used excessive force by holding Plaintiffs within the home at gunpoint. (ECF No. 1 at 7.) However, the evidence demonstrates that Officer Wallace did not point his firearm at anyone other than Mr. Montelongo. (*See generally* Wallace Video; Lozano Dep. 155:11–155:13; Ali. M. Dep. 122:10–122:24; J.M. Dep. 77:10–78:17; E.M. Dep. 62:20–63:6, 66:4–67:1.) Notably, Plaintiffs do not address these claims in their opposition, and there does not appear to be any other viable basis for the remaining Plaintiffs to bring excessive force claims. For these reasons, the Court GRANTS Defendants' motion for summary judgment as to the remaining Plaintiffs' excessive force claims.

### ii. Unlawful Detention (Claims Two and Three)

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Peace officers may conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that "criminal activity may be afoot." *Terry*, 392 U.S. at 30. The Fourth Amendment also prohibits arrests without probable cause or other justification. *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009).

Plaintiffs summarily allege in their second and third claim that the officers "detained Plaintiffs without reasonable suspicion" and "arrested Plaintiffs without probable cause." (ECF No. 1 at 7.) These claims are devoid of factual allegations regarding who was detained, how the individuals were detained, or why the detention was unlawful. Not only are Plaintiffs' allegations broad and conclusory, but Plaintiffs also fail to present any evidence or argument to defend their unlawful detention claims in their opposition. As it is, the evidence shows that the officers had probable cause to arrest Mr. Montelongo pursuant to California Penal Code § 148 after he refused to comply with Officer Wallace's commands and threw an object at the officer. (ECF No. 86 at 24.) The grounds for the other Plaintiffs' unlawful detention claims are unclear and unsupported by the evidence.

For these reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' second and third claims.

### iii. Equal Protection (Claim Four)

In order to state a § 1983 claim for violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–240 (1976)).

In Claim Four, Plaintiffs allege the officers' "unreasonable use of force" was "based on Plaintiffs' race." (ECF No. 1 at 8.) Again, Plaintiffs' allegations are broad and conclusory. Additionally, Plaintiffs have not presented any evidence to suggest that Officer Wallace intentionally used force because of Plaintiffs' race.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' fourth claim.

### B. State Law Claims

Plaintiffs also bring three state law claims: (1) violation of the Ralph Act (Claim Five); (2) violation of the Bane Act (Claim Six); and (3) intentional infliction of emotional distress ("IIED") (Claim Seven). Defendant moves for summary judgment as to all three state law claims. (ECF No. 86 at 2.) The Court will address each claim in turn.

####   i.   Ralph Act (Claim Five)

The Ralph Act, California Civil Code § 51.7, provides that "[a]ll persons within [California] have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of [race]." Cal. Civ. Code §§ 51.7(a), 51(b). In order to establish a Ralph Act claim, "a plaintiff must show '(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.'" *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015).

Plaintiffs do not address the Ralph Act claim in their opposition. Like the Equal Protection claim, Plaintiffs' Ralph Act claim fails because there is no evidence that Officer Wallace's actions were racially motivated. Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' Ralph Act claim.

####   ii.   Bane Act (Claim Six)

The Bane Act, California Civil Code § 52.1, provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(a).

Defendant argues that Plaintiffs' Bane Act claim fails because there is no underlying constitutional violation. (ECF No. 86 at 27.) For the reasons already discussed, there are genuine issues of material fact as to whether Officer Wallace used excessive force against Mr. Montelongo in violation of his Fourth Amendment rights. *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."). However, as discussed, there is no evidence that Defendants interfered with the remaining Plaintiffs' legal rights, and Plaintiffs make no argument on this point. As such, the Court DENIES Defendants' motion for summary judgment as to Mr. Montelongo's Bane Act claim and GRANTS the motion as to the remaining Plaintiffs' Bane Act claims.

       *iii.*  IIED (Claim Seven)

To succeed on an IIED claim, Plaintiffs must show that Defendants intentionally or recklessly caused them to suffer "severe or extreme emotional distress" through their "extreme and outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (internal quotation marks omitted).

Plaintiffs argue they have "extreme anxiety being around law enforcement officers" and are "angry and scared about what happened to them." (ECF No. 89 at 25.) Plaintiffs further argue they "are deeply saddened" about Officer Wallace's use of force in response to Mr. Montelongo "tossing" a book at the officer. (*Id.*) Plaintiffs assert "Defendants' contention that [Officer] Wallace's actions do not amount to outrageous conduct is mistaken and not in line with long standing and well settled law in California." (*Id.*) Yet Plaintiffs fail to cite any authority to support this assertion.

Plaintiffs' IIED claims fail as a matter of law because no reasonable jury could find that the officers engaged in extreme and outrageous conduct. Although the Court has decided that a reasonable jury could find that Officer Wallace's actions constituted excessive force, Officer Wallace's actions — responding to the domestic disturbance call, firing a single shot at a suspect who failed to comply with commands and threw a concealed object at him, and subsequently clearing Plaintiffs from the home — were not "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1050.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' IIED claims.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment (ECF No. 86) as follows:

1. The Court DENIES summary judgment as to Mr. Montelongo's excessive force claim and GRANTS summary judgment as to the remaining Plaintiffs' excessive force claims (Claim One);

2. The Court GRANTS summary judgment as to Plaintiffs' remaining § 1983 claims (Claims Two, Three, and Four);

3. The Court GRANTS summary judgment as to Plaintiffs' Ralph Act claim (Claim Five);

4. The Court DENIES summary judgment as to Mr. Montelongo's Bane Act claim and GRANTS summary judgment as to the remaining Plaintiffs' Bane Act claims (Claim Six); and

5. The Court GRANTS summary judgment as to Plaintiffs' IIED claim (Claim Seven).

The only remaining claims are Mr. Montelongo's excessive force claim (Claim One) and Bane Act claim (Claim Six). Therefore, the Court DISMISSES all Plaintiffs except Mr. Montelongo from this action. The remaining parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

DATED: June 14, 2021

Troy L. Nunley
United States District Judge

17